USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/23/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

JOHN CHANEY,

                                      Plaintiff,

                  -v-

STARBUCKS CORPORATION,

                                      Defendant.

------------------------------------------------------------------X

14 Civ. 7013 (PAE)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

      On August 9, 2013, plaintiff John Chaney went to a Starbucks café in the Bronx for lunch. Upon entry, he saw that a customer in the seating area had plugged a white electrical charger into an outlet. After buying lunch, Chaney sat down near that patron. When Chaney rose from his chair 20 minutes later, he stepped on the charger, causing him to fall and injure himself. Six months later, Chaney brought this negligence action against defendant Starbucks Corporation ("Starbucks"), claiming that Starbucks had failed to safely maintain the seating area in its café.

      Following discovery, Starbucks now moves for summary judgment. It argues that the material facts are undisputed and that, on those facts, it had no legal duty to Chaney with respect to the charger because the charger was open and obvious, and not inherently dangerous. The Court agrees and therefore grants Starbucks's motion for summary judgment.

I.  **Background**

   A.   **Factual Background**[1]

The material facts of this case are not in dispute. On August 9, 2013, Chaney went to eat lunch at a Starbucks café located at 3503 Johnson Avenue in the Bronx, New York. Def. 56.1 ¶ 4. He worked nearby and visited this particular Starbucks location about two to three times per week. *Id.* ¶¶ 5–6.

As Chaney entered, he noticed that a customer in the seating area had plugged a white electrical charger[2] into the wall. *Id.* ¶¶ 16–17. The charger consisted of a cord attached to a small, white square, which lay flat upon the café's orange tile floor. *Id.* ¶ 19.[3] Chaney did not mention the charger to the customer, nor did he report it to any Starbucks employee. *Id.* ¶ 18.[4]

---

[1] This account is drawn from the parties' submissions, including Chaney's Complaint (Dkt. 1, Ex. A.); Starbucks's Answer (Dkt. 1, Ex. B); Starbucks's memorandum of law in support of its motion for summary judgment (Dkt. 20) ("Starbucks Br."); the Declaration of George N. Tompkins III (Dkt. 21) ("Tompkins Decl."), which attaches Chaney's deposition ("Chaney Dep."); Starbucks's Local Rule 56.1 Statement of Material Facts (Dkt. 22) ("Def. 56.1"); the Declaration of Scott Wolinetz (Dkt. 24) ("Wolinetz Decl."), which includes the deposition of Camille Williams ("Williams Dep."); Chaney's memorandum of law in opposition to Starbucks's motion for summary judgment (Dkt. 25) ("Chaney Br."); and Starbucks's reply memorandum (Dkt. 29) ("Starbucks Reply Br."). Chaney did not submit a Rule 56.1 Statement, and does not contest any of the facts in Starbucks's Rule 56.1 statement, in which the relevant facts are based on Chaney's deposition testimony. *See* Chaney Br. 1 ("Plaintiff does not contest the facts as set forth by Defendant via the testimony of Plaintiff in this action.").

[2] The parties alternatively use the terms "iPhone" and "computer" when describing the device associated with the charger.

[3] Chaney estimates that the white square measured half an inch by an inch and three quarters by an inch and three quarters. Chaney Dep. 39. The record is silent as to how far above the floor the outlet was situated.

[4] Chaney did not seek to depose a Starbucks corporate representative under Federal Rule of Civil Procedure 30(b)(6) and did not notice the deposition of any Starbucks employee except a single barista, Camille Williams, employed at the Starbucks café at issue. Williams testified that she did not recall the incident involving Chaney, nor whether she had worked that day, and that she and other baristas generally were not responsible for maintaining the seating area. *See* Williams Dep.

2

Chaney walked past the seating area, proceeding to the counter, where he ordered lunch (an egg salad sandwich and an Americano beverage).  Def. 56.1 ¶¶ 8–9.  He brought his lunch over to a table to eat, and he testified that he did not have to step over the cord in the process of seating himself.  *Id.* ¶¶ 11, 21.  The cord remained by the wall, situated about 12 to 14 inches away from his table.  Tompkins Decl., Ex. C ("Chaney Dep."), at 40.

After about 20 minutes, Chaney finished eating and got up from his table.  Def. 56.1 ¶¶ 12–13.  As he made his way toward the exit, he stepped on the white square attached to the cord, causing him to lose his balance and fall.  *Id.* ¶ 14.  At his deposition, Chaney was unable to explain why, having earlier seen the white square, he had not stepped over it or otherwise avoided it.  *Id.* ¶ 26.  Chaney remained on the floor for about three minutes, after which another customer, Nicole Suozo, asked him if he was "okay."  Chaney Dep. 44–48.  Chaney responded that he was, and then went to the bathroom to "get [himself] together."  *Id.* at 48.

Upon returning, Chaney approached the counter and told two baristas, including Camille Williams, about the incident.  *Id.*  They offered him a cup of coffee, which he declined.  *Id.* at 48–52.  After waiting about five to 10 minutes, he left.  *Id.* at 52.  He did not complete any paperwork or tell any Starbucks representative, apart from the two baristas, about the incident.  *Id.* at 52–53.  Chaney testified that he took a photo of the charger after the incident, which he stored on his computer.  *Id.* at 95.  However, this photo is not part of the record, and at argument, Chaney's counsel stated that he does not know whether it still exists.  6/9/15 Tr. 28–29.

---

14, 18.  Nor did Starbucks, in moving for summary judgment, submit any declarations as to policies or practices with respect to the customer seating area.  As a result, the record is silent as to whether Starbucks in general has a policy for monitoring or maintaining customer seating areas in its locations, including with respect to the placement of customers' chargers; or which personnel, if any, had responsibility for monitoring or maintaining that area at the location in question.

Chaney then drove to Shire Realty, where he worked as a personal assistant. Chaney Dep. 11, 55. A co-worker took him to the emergency room at the New York-Presbyterian Hospital, where he underwent a precautionary MRI exam. *Id.* at 55–58. He was immediately discharged, but he returned to the emergency room three days later when he experienced more pain. *Id.* at 60–62. The doctor prescribed him Naproxen, a pain relief medication, but did not recommend further treatment. *Id.* at 62–63.

Chaney claims that, as a result of the fall, he sustained back, neck, and head injuries, including herniated discs, multiple forms of traumatic brain injury, severe migraines, headaches, dizziness, and neck pain. Dkt. 1, Ex. E. He claims that he has sought medical attention from the New York-Presbyterian Hospital, Lenox Hill Radiology, and Maximum Orthopaedics and Sports Medicine, and that he was confined to his home for a week after the incident. *Id.* Chaney seeks special damages of $100,000, including for future medical care. *Id.*

### B. Procedural History

On January 30, 2014, Chaney filed this negligence action in New York State Supreme Court for Bronx County, claiming that Starbucks neglected its duty to properly maintain the seating area, causing his injuries. Dkt. 1, Ex. A. On March 26, 2014, Starbucks answered, denying liability. Dkt. 1, Ex. B. On August 28, 2014, Starbucks removed the case to this Court, based on diversity jurisdiction. Dkt. 1.

The parties took limited discovery. Starbucks deposed only Chaney, believing that his admissions, including that he saw the charger in the seating area before the incident, establish that the charger was open and obvious and not inherently dangerous, so as to preclude Starbucks's liability for negligence. Chaney deposed only Williams, who testified that she did not recall the incident or whether she had worked on the day in question. *See* Williams Dep. 14,

18. Neither party deposed Suozo, who, Chaney states, witnessed the incident; adduced evidence as to Starbucks's policies in general, or the practices at the location in question, with respect to supervision of the customer seating area or similar incidents, if any; or submitted tangible evidence, including a floor plan of the Starbucks location.[5]

On April 13, 2015, after discovery, Starbucks moved for summary judgment. Dkt. 19. Starbucks filed a declaration, Dkt. 21, and a memorandum of law in support of its motion, Dkt. 20 ("Starbucks Br."), arguing that it had no duty to protect Chaney from an open and obvious condition, which, as a matter of law, was not inherently dangerous. On May 15, 2015, Chaney filed a declaration, Dkt. 24, and a memorandum of law in opposition to the motion, Dkt. 25 ("Chaney Br."), arguing, *inter alia,* that whether the condition was open or obvious is relevant only to damages, and noting that Starbucks had not established that it lacked actual or constructive notice of the ostensibly dangerous condition (the charger, situated in the customer seating area) that allegedly caused his injury. *Id.* On June 1, 2015, Starbucks filed a reply brief. Dkt. 29 ("Starbucks Reply Br."). On June 9, 2015, the Court held argument. *See* 6/9/15 Tr.

## II. Discussion

### A. Applicable Legal Standards

#### 1. Summary Judgment Standard

To prevail on its summary judgment motion, the moving party must "show[] that there is no genuine dispute as to any material fact and that [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most

---

[5] There is also no video footage of the incident. Chaney filed suit nearly six months afterwards; Starbucks represents that "the system utilized at the store automatically overwrites video every 10 days." Dkt. 11.

5

favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 52 F.3d 130, 132 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation and internal quotation marks omitted). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

### 2. Legal Duty Standard

To prevail on a negligence claim, the plaintiff must establish "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Solomon ex rel. Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985); *see also Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981). Only the first element, the existence of a legal duty, is in dispute on this summary judgment motion.[6]

---

[6] At argument, Starbucks conceded that, if its summary judgment motion directed to the element of a legal duty were denied, it would be a factual question for the jury whether it had breached that duty. *See* 6/9/15 Tr. 17–18. That concession appears correct, with neither party having taken any discovery as to the steps, if any, that the Starbucks location at issue took to ensure that the customer seating area was safe.

Generally, under New York law, "landowners owe people on their property a duty of reasonable care under the circumstances to maintain their property in a safe condition." *Tagle v. Jakob*, 97 N.Y.2d 165, 168 (2001). However, "a landowner has no duty to protect or warn against an open and obvious condition which, as a matter of law, is not inherently dangerous." *Varon v. N.Y.C. Dep't of Educ.*, 998 N.Y.S.2d 433, 434 (2d Dep't 2014). In such cases, the condition "cannot fairly be attributed to any negligent maintenance of the property" on the landowner's part. *Cupo v. Karfunkel*, 767 N.Y.S.2d 40, 43 (2d Dep't 2003). On Starbucks's motion for summary judgment directed to the existence of a duty, the Court therefore focuses on two questions: Whether the condition that Chaney now complains of was (1) open and obvious, and (2) not inherently dangerous.

As to the first question, "open and obvious is generally fact-specific and thus usually a jury question, [but] a court may determine that a [condition] was open and obvious as a matter of law when the established facts compel that conclusion, and may do so on the basis of clear and undisputed evidence." *Tagle*, 97 N.Y.2d at 169 (internal citations omitted). To establish that a condition was "open and obvious," the landowner must demonstrate "that the condition . . . was readily observable by the plaintiff employing the reasonable use of his senses." *Powers v. 31 E 31 LLC*, 998 N.Y.S.2d 23, 25 (1st Dep't 2014). Such a determination "cannot be divorced from the surrounding circumstances." *Mazzarelli v. 54 Plus Realty Corp.*, 864 N.Y.S.2d 554, 555 (2d Dep't 2008).

As to the second question, the "inherently dangerous" inquiry is also often a jury question, which "depends on the totality of the specific facts of each case." *Russo v. Home Goods, Inc.*, 990 N.Y.S.2d 95, 97 (2d Dep't 2014). However, the landowner may establish a *prima facie* entitlement to judgment as a matter of law where the evidence shows that the

condition was "not inherently dangerous." *Varon*, 998 N.Y.S.2d at 434.  If, in response, the plaintiff fails to raise "triable issues of fact as to whether the [condition] was inherently dangerous," the Court may resolve this issue as a matter of law.  *Russo*, 990 N.Y.S.2d at 97.

In assessing inherent dangerousness, the Court may consider factors including the inherent nature of the condition at issue, evidence of prior accidents, whether there is a statutory violation, the frequency of inspections, photographs depicting the condition, and expert testimony.  *See, e.g.*, *Abraido v. 2001 Marcus Ave., LLC.*, 4 N.Y.S.3d 43, 44 (1st Dep't 2015) (holding curb not inherently dangerous based on daily inspections of its condition, as well as lack of prior complaints); *Oldham-Powers v. Longwood Cent. Sch. Dist.*, 997 N.Y.S.2d 687, 689 (2d Dep't 2014) (holding pole vault box inherently dangerous based on expert testimony that the owner was required to either cover it or post warning signs); *Burke v. Canyon Road Rest.*, 876 N.Y.S.2d 25, 26 (1st Dep't 2009) (holding restaurant's entranceway not inherently dangerous based on a lack of complaints to the general manager, previous accidents, or code violations); *Cardia v. Willchester Holdings, LLC*, 825 N.Y.S.2d 269, 270 (2d Dep't 2006) (holding parking lot divider not inherently dangerous based on photographs depicting its condition at the time of the injury).

Where a landowner fails to establish that the condition was "not inherently dangerous," summary judgment is to be denied, and the case is to proceed to trial, even if the condition is found open and obvious, because "the open and obvious nature of the condition is relevant [only] to the issue of the plaintiff's comparative negligence."  *Cupo*, 767 N.Y.S.2d at 43.

**B.     Analysis**

The Court grants Starbucks's summary judgment motion because, on the evidence adduced, the condition at issue was open and obvious and could not be found by a jury to be inherently dangerous.

As to the first point, a court may determine whether a condition was "open and obvious as a matter of law when the established facts compel that conclusion." *Tagle*, 97 N.Y.2d at 169 (internal citations omitted). Chaney's brief did not contest this issue, Chaney Br. 1, presumably because Chaney himself had admitted seeing the charger's white square upon entering the Starbucks café. Chaney Dep. 39. Further, at argument, Chaney's counsel conceded that the white charger was indeed "open and obvious." *See* 6/9/15 Tr. 33.

In any event, even putting aside counsel's concession, the evidence uniformly supports that the relevant condition, the white charger square offset against the store's orange-colored floor, was "open and obvious." Chaney Br. 3–4; Starbucks Br. 3. Virtually any patron in Chaney's position would have readily noticed the charger by "making reasonable use of his senses," as there was a stark color contrast between the white charger and the orange tile floor. *See* Def. 56.1 ¶ 19; Chaney Dep. 40; *see generally Miller v. Costco Wholesale Corp.*, 4 N.Y.S.3d 281, 282–83 (2d Dep't 2015) (holding that wheel stop that caused plaintiff's injury was "open and obvious" based on its "contrast to the color of the pavement to which it was affixed"); *Gallo v. Hempstead Tpk., LLC*, 948 N.Y.S.2d 660, 661 (2d Dep't 2012) (similar).

The fact that Chaney himself saw the charger upon entering the property, *see* Def. 56.1 ¶ 17; Chaney Dep. 40, although not dispositive of openness and obviousness, is germane: In other cases in which the plaintiff has admitted observing beforehand the condition that caused his injury, courts have considered that factor in finding the condition "open and obvious." *See, e.g.*,

*Bernth v. King Kullen Grocery Co.*, 830 N.Y.S.2d 222, 222 (2d Dep't 2007) (holding that an empty merchandise cart in the aisle of a supermarket was "open and obvious" where plaintiff testified he had noticed it shortly before accident); *Bellini v. Gypsy Magic Enters., Inc.*, 978 N.Y.S.2d 73, 75 (2d Dep't 2013) (holding that wheel stop in a parking lot was "open and obvious" where plaintiff testified she had noticed it shortly before accident).

The Court therefore finds the condition here to have been open and obvious.

As to the second prong of the duty analysis, a court may determine whether a condition was "inherently dangerous" as a matter of law when the evidence compels a single conclusion. *See, e.g.*, *Varon*, 998 N.Y.S.2d at 434. Such is the case here.

The evidence on which Starbucks, the moving party, relies is undisputed: Indeed, it comes from the testimony of Chaney, the only one of the two witnesses to be deposed who recalled the incident. Chaney testified that the white charger square on which he stepped visibly contrasted with the orange tile floor, that he was aware of it upon entering the property, and that he was able to avoid stepping on it when he entered the seating area. Def. 56.1 ¶¶ 16–22; Chaney Dep. 39–40. And, although the parties' minimalist approach to discovery—including declining to generate a record of the floor plan of the store, *see* 6/9/15 Tr. 6–7—has left regrettably unrecorded the offending charger's precise placement in the Johnson Avenue Starbucks, Chaney's testimony establishes that the charger was not in a walkway, or in front of a service counter, or any other place where a customer might expect the floor to be unobstructed. *See* Chaney Dep. 38. Rather, Chaney testified, the charger was close to or alongside the wall in the customer seating area, an area where customers, seated at tables, may plug in such devices. *See id.* at 38–40.

The charger was thus in a position on the floor where a customer would reasonably expect to come across a charger, a point that Chaney himself acknowledged. *See* Chaney Dep. 39. Such chargers today are in fact ubiquitous in public places in this country, including in cafés, eateries, and other informal establishments like Starbucks that by design invite customers to sit and work on laptops or handheld devices while they drink, eat, or converse. The Court can fairly take judicial notice of this phenomenon.[7] A customer in the seating area of such an establishment would have every reason to expect charger cords belonging to other customers to be in use, and potentially to rest on the floor. For that matter, such a customer would reasonably expect to find, on the floor of the seating area, any number of small personal items (*e.g.*, purses, knapsacks, shopping bags, briefcases, food wrappers, coffee cups, etc.) that another customer may have carried in or bought at the café itself. And, as Chaney further acknowledged, he was

---

[7] *See Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 106 n.20 (2d Cir. 2014) (taking judicial notice of the popular architectural styles of homes); *Willis v. Home Box Office*, No. 00 Civ. 2500 (JSM), 2001 WL 1352916, at *2 (S.D.N.Y. Nov. 2, 2001), *aff'd*, 57 F. App'x 902 (2d Cir. 2003) (summary order) (taking judicial notice that modern forms of entertainment commonly depict unethical characters); *Antares Mgmt. LLC v. Galt Global Capital, Inc.*, No. 12 Civ. 6075 (TPG), 2013 WL 1209799, at *1 n.1 (S.D.N.Y. Mar. 22, 2013) (taking judicial notice of "Facebook Inc.'s international popularity and widespread influence"); *Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 199 (E.D.N.Y. 2013) (taking judicial notice that New York is densely populated, and therefore most consumers in the metropolitan area tend to travel only short distances to eat at fast food establishments); *Jeri-Jo Knitwear, Inc. v. Club Italia, Inc.*, No. 98 Civ. 4270 (RO), 1999 WL 500146, at *2 (S.D.N.Y. July 15, 1999) (taking judicial notice "of the fact that casual clothing is increasingly unisex"); *Orto Conserviera Cameranese d Giacchetti Marino & C. s.n.c. v. Bioconserve, s.r.l.*, No. 97 Civ. 6638 (JSM), 1999 WL 47258, at *2 (S.D.N.Y. Feb. 3, 1999), *aff'd sub nom. Orto Conservia Cameranese Di Giacchetti Marino & C., S.N.C. v. Bioconserve S.R.L.*, 205 F.3d 1324 (2d Cir. 2000) (taking judicial notice that "those who are interested in gourmet foods are often people who travel internationally or, at least, keep abreast of international developments in the food market"); *see also Erie Cnty. Bd. of Soc. Welfare on Complaint of McCarter v. Holiday*, 220 N.Y.S.2d 679, 680 (4th Dep't 1961) ("[C]ourts will take judicial notice of the normal things of life," and "[a]nything out of the ordinary must be proved."); *cf. Hotel Emps. & Rest. Emps. Union, Local 100 of N.Y., N.Y. & Vicinity, AFL CIO v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 540 n.1 (2d Cir. 2002) (taking judicial notice of the history of the construction of Lincoln Center).

not required to step in the charger's path to exit the Starbucks location at issue; an alternative path around the charger was available. Chaney Dep. 36–37; *see generally Saltz v. Wal-Mart Stores, Inc.*, No. 10 Civ. 4687 (NRB), 2012 WL 811500, at *9 (S.D.N.Y. Mar. 7, 2012), *aff'd*, 510 F. App'x 68 (2d Cir. 2013) (summary order) (holding that an open and obvious condition was not inherently dangerous where an alternative path was available).

To permit a jury to find that the charger was inherently dangerous under these spare and unremarkable circumstances—where the charger was conspicuous against the store's orange floor, and where no evidence of dangerousness has been elicited beyond the fact that the charger rested on a floor where it could potentially be stepped upon—would effectively permit a finding of inherent dangerousness as to virtually any readily visible item of personal property, food, or litter that a customer may have placed on the floor in the seating area of a café and on which a person could potentially trip. The Court declines to so find. *See Tagle*, 97 N.Y. 2d at 168 (courts may consider "reasonable expectations of the parties and society generally" in determining whether a landowner's duty exists); *Matteo v. Kohl's Dep't Stores, Inc.*, No. 09 Civ. 7830 (RJS), 2012 WL 760317, at *7 (S.D.N.Y. Mar. 6, 2012), *aff'd*, 533 F. App'x 1 (2d Cir. 2013) (summary order) (whether condition was inherently dangerous may depend on whether customers reasonably expected to encounter it in the location at issue); *see also Rochford v. Woodloch Pines, Inc.*, 824 F. Supp. 2d 343, 350 (E.D.N.Y. 2011) (holding that steps on a golf course were not inherently dangerous when plaintiff, who had experience as a golfer, reasonably should have expected them to be slippery in the rain); *Glassberg v. Staples the Office Superstore E., Inc.*, No. 08 Civ. 2132 (KAM) (JMA), 2010 WL 3924682, at *5 (E.D.N.Y. Sept. 13, 2010), *report and recommendation adopted*, 2010 WL 3909206 (E.D.N.Y. Sept. 29, 2010) (holding that

stocking cart, of the sort commonly used in stores, was not inherently dangerous when used in a way consistent with general customer expectations).

Although the parties have not cited—and the Court has not found—any case precisely matching these facts, the Court's holding here that the charger on the Starbucks's seating area floor was not inherently dangerous further accords with a line of cases holding that cords and cables are "not inherently dangerous" when situated in areas where a person would ordinarily expect to find them. *See, e.g.*, *Holdos v. Am. Consumer Shows, Inc.*, 937 N.Y.S.2d 303, 304 (2d Dep't 2012) (holding that yellow and blue cable cover, "over which the plaintiff allegedly tripped and fell while attending a trade show," was not inherently dangerous); *Booker v. Ky. Ctr. for Arts Corp.*, No. 05 Civ. 841 (MR), 2006 WL 2578303, at *1 (Ky. Ct. App. Sept. 8, 2006) (holding that cords over which plaintiff tripped while exiting movie theater were not inherently dangerous); *Rhodes v. Detroit Med. Ctr.*, No. 262787, 2006 WL 355249, at *1 (Mich. Ct. App. Feb. 16, 2006) (holding that cord next to hospital bed was not inherently dangerous, especially when the "evidence show[ed] there was ample room to avoid the cord" and "objectively viewed, the existence of a cord next to a hospital bed does not pose a uniquely high likelihood of harm"); *Dunlop v. Reynolds*, 204 So. 2d 754, 754–55 (Fla. Dist. Ct. App. 1967) (holding that telephone cord was inherently dangerous only when a customer had moved it from the area where it was usually placed).

Chaney has not pointed to any evidence creating an issue of fact that could disturb this outcome. His brief stated that he "does not contest the facts as set forth" by Starbucks, Chaney Br. 1; and in the only deposition Chaney's counsel took, Williams testified that she did not recall the August 9, 2013 incident, or whether she had worked that day, Williams Dep. 14. Chaney asserts that it is "axiomatic that . . . chargers left lying on the floor of a seating area in a public

and heavily trafficked retail coffee shop such as Starbucks are inherently dangerous," Chaney Br. 4, but this *ipse dixit* misstates New York law. The potential for an accident to occur does not make a situation inherently dangerous; indeed, that a condition "may pose a danger under certain circumstances is insufficient by itself to establish that a particular instance of such a condition was inherently dangerous." *Glassberg*, 2010 WL 3924682, at *5; *see also Piacquadio v. Recine Realty Corp.*, 84 N.Y.2d 967, 969 (1994) ("[A] 'general awareness' that a dangerous condition may be present is legally insufficient to constitute notice of the particular condition that caused plaintiff's fall . . . .") (citing *Gordon v. Am. Museum of Natural History*, 67 N.Y.2d 836, 838 (1986)).

Separately, Chaney invokes the common-law doctrine of "momentary forgetfulness," Chaney Br. 4, but this doctrine does not gain him traction on this motion. Chaney's point is that, while he noticed the charger when he entered the Starbucks, he may have forgotten about it at the time he got up to leave. Under the doctrine of momentary forgetfulness, the law, rather than categorically holding against a plaintiff for failing to act on his knowledge, leaves it "for the trier of fact to determine 'whether the failure to have the danger in mind was the result of such poor memory or such inattentiveness on the part of the injured person as to charge him with conduct falling below the standard of a reasonably prudent man.'" *Flynn v. City of New York*, 478 N.Y.S.2d 666, 668 (2d Dep't 1984) (quoting *Rugg v. State*, 131 N.Y.S.2d 2, 6 (3d Dep't 1954)).

But, for several reasons, the "momentary forgetfulness" doctrine does not avail Chaney on Starbucks's motion for summary judgment. First, in his deposition, Chaney did not testify that he had forgotten about the charger when he arose to leave. Second, even assuming that such a memory lapse could be inferred from the fact (if found) of Chaney's having stepped on the charger, it is unclear whether the momentary forgetfulness doctrine still applies in New York, at

14

least at the liability stage.[8]  Third, and most important, Chaney's memory lapse, and this doctrine, simply do not bear on the issue of inherent dangerousness.  *See Schulman v. Old Navy/The Gap, Inc.*, 845 N.Y.S.2d 341, 342 (1st Dep't 2007) (holding summary judgment proper when plaintiff tripped over a bracket covered with clothing, which she had known was there but did not notice at the time she came into contact with it).

Finally, at argument, Chaney faulted Starbucks for its anemic efforts to develop the factual record.  6/9/15 Tr. 21–23.  It is fair to say that neither party here was energetic in discovery.  The Court would have particularly benefited from a clearer understanding of the layout of the Starbucks café at issue, where precisely Chaney sat, and where the charger was situated immediately before Chaney fell.  Either party could have elicited this testimony from Chaney.  The Court also was struck by the absence of any discovery as to whether any accidents similar to Chaney's have ever occurred at the Johnson Avenue site.

However, for the reasons reviewed above, the evidence in the record did not leave any issue of material fact as to either openness and obviousness or inherent dangerousness.  In the absence of an evidentiary basis on which a trier of fact could find for Chaney on either of these elements, Chaney cannot resist Starbucks's motion for summary judgment by imagining the possibility that as-yet undiscovered facts might rescue his claim.  *See Meiri v. Dacon*, 759 F.2d

---

[8] *See O'Neill v. Spritzer*, 553 N.Y.S.2d 392, 393 (1st Dep't 1990). The Appellate Division, Second Department, has described the "momentary forgetfulness" doctrine as:

> a vestigial anachronism derived from a system of injury compensation which no longer is operative in this State.  Its underpinnings have been eroded by the introduction of a system whereby legal responsibility for injury is apportioned on the basis of comparative fault . . . .  Therefore, the reason for the momentary forgetfulness doctrine no longer exists and the question of whether a plaintiff's temporary forgetfulness constitutes contributory negligence is no longer germane.

*Flynn*, 478 N.Y.S.2d at 669.

989, 998 (2d Cir. 1985) ("A party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial for in doing so he risks the possibility that there will be no trial.") (quoting *Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir. 1972)); *Olsen v. K Mart Corp.*, No. 04 Civ. 3648 (JMA), 2005 WL 2989546, at *14 (E.D.N.Y. Nov. 8, 2005) ("A plaintiff opposing such a motion for summary judgment, must come forward with evidence of sufficient facts from which defendant's negligence . . . could be inferred."). Because Chaney has not adduced any such evidence, summary judgment is merited for Starbucks. *See Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir. 1994) ("[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.") (internal citations omitted).

## CONCLUSION

For the foregoing reasons, the Court grants Starbucks's summary judgment motion. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 19, and to close this case.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: June 23, 2015
        New York, New York